Joseph R. Manning, Jr., Esq. (State Bar No. 223381)
Caitlin J. Scott, Esq. (State Bar No. 310619)
**MANNING LAW, APC**
4667 MacArthur Blvd., Suite 150
Newport Beach, CA 92660
Office: (949) 200-8755
Fax: (866) 843-8308
ADAPracticeGroup@manninglawoffice.com

Attorneys for Plaintiff SEAN GORECKI

UNITED STATES DISTRICT COURT

CENTRAL DISTRICT OF CALIFORNIA-WESTERN DIVISION

| | |
|---|---|
| SEAN GORECKI, an individual, <br><br> Plaintiff, <br><br> v. <br><br> VCA INC., a Delaware corporation, <br><br> Defendant. | **Case No.** 2:16-cv-06992-DMG-AS <br><br> **Judge:** Hon. Dolly M. Gee <br><br> **PLAINTIFF'S CASE STATEMENT** |

    Pursuant to this Court's "ADA Disability Access Litigation Order Staying Action and Requiring Early Mediation," filed October 20, 2016, Plaintiff submits his ADA Mediation Statement.

1

## A. INTRODUCTION

Plaintiff uses a screen reader to access the internet and read internet content on his computer. Despite multiple attempts to navigate both VCAHospitals.com and VCAHospitals.com/West-Los-Angeles (the "websites" or "Defendant's websites"), Plaintiff has been denied the full use and enjoyment of the facilities, goods, and services offered by VCA as a result of accessibility barriers on Defendant's websites.

## B. ITEMIZED LIST

The specific conditions that form the basis of the lawsuit are that the websites, VCAHospitals.com and VCAHospitals.com/West-Los-Angeles.com, contain numerous accessibility barriers and do not otherwise conform to the four basic principles utilized in developing the Web Content Accessibility Guidelines 2.0 AA ("WCAG 2.0 AA"), published by the World Wide Web Consortium, an organization known as the W3G. Defendant's websites do not conform to the WCAG 2.0 AA guidelines, in that they do not provide web content to Plaintiff, a legally blind individual, that is sufficiently perceivable, operable, understandable, and robust enough for Plaintiff to independently, fully and equally access Defendant's websites using screen-reading software on a computer.

The access barriers complained of are numerous and integrated throughout the websites. Examples of the many specific access barriers encountered by Plaintiff and revealed through his use of screen-reading software include, but are not limited to, the following:

- Inaccessible "re-captchas" which were encountered while attempting to obtain a free initial pet exam visit.
- Social media areas are not labeled clearly and reveal numbers, which have no meaning to a visually-impaired user like Plaintiff.
- Links at the bottom of the websites that say "VCA Animal Hospitals," implying they are links to the Home Page or other areas on the site, but

actually direct the user to social media sites.

- While attempting to fill out online forms, Defendant's websites direct screen-reading software to repeat or re-read all information about the required fields before describing the next field below.
- Calendar options with preferred dates that are not accessible to screen-reading software.
- Screen-reading software is directed to only read the first image of the slideshows contained on the homepage, does not indicate it is a slideshow, and does not read graphics when it changes. When the user attempts to access the first graphic to hear the information about it or determine if it was a link, the graphic changes.
- On the Pet Adoption page is a link that says "Adopt From A Local Shelter." When clicked, there is a graphic that is not labeled correctly that reads "Graphic: Created with Rephael 2.1.0."
- When hovering over the map of the United States, screen reader software reads each state as a phonetic version of the initials (i.e. WY for Wyoming sounds like "Y" and NY for New York sounds like "Nigh"). Screen-reading software does not recognize that these states are clickable and clicking on them does not direct the screen reader to identify that anything has happened. There is no text before the map to tell a visually-impaired user what is happening or how to proceed. The map is not sufficiently intuitive for a visually-impaired person to figure out.
- Furthermore, the PDF version of the U.S. map identifying locations for animal hospitals is not formatted in a way that a visually-impaired person using a screen reader user can navigate.

C. **AMOUNT OF DAMAGES**

Under the Unruh Civil Rights Act and the California Disabled Persons

Act, a plaintiff is entitled to two types of damages: (1) actual damages and (2) a penalty assessment. Cal. Civ. Code § 52(a); 54.3(a). "The statute lists actual damages and statutory damages as two separate categories of damages that a plaintiff may recover." Botosan v. Paul McNally Realty, 216 F.3d 827, 835 (9th Cir. 2000). The penalty assessment can be "no less than $4,000" under the Unruh Civil Rights Act (Cal. Civ. § 52(a)) and no less than $1,000 under the California Disabled Persons Act (Cal. Civ. § 54.3(a)). A plaintiff's damages are measured at $4,000 plus actual damages for each offense. Thus, Plaintiff claims $16,000 in total damages for multiple violations and deterrence.

### D.  AMOUNT OF ATTORNEY'S FEES AND COSTS

Plaintiff claims $25,000 in attorney's fees and costs. This includes attorneys fees and costs incurred up to an including the mediation, drafting a settlement agreement to accomplish ADA compliance by Defendant and to monitor and assist with same prospectively.

### E.  DEMAND FOR SETTLEMENT OF CASE

Plaintiff has standing to seek injunctive relief for all barriers contained on Defendant's websites, because "[a]n ADA plaintiff who has Article III standing as a result of at least one barrier at a place of public accommodation may, in one suit, permissibly challenge all barriers in that public accommodation that are related to his or her specific disability." Doran v. 7–Eleven, Inc., 524 F.3d 1034, 1047 (9th Cir. 2008). Because Plaintiff has encountered at multiple barriers, Plaintiff has standing to seek and obtain injunctive relief requiring Defendant to remove all access barriers contained on Defendant's website.

Specifically, Plaintiff seeks Defendant remedy all areas of Defendant's websites which are not sufficiently perceivable, operable, understandable, or robust enough for users of screen-reading software to navigate the websites and violate

WCAG 2.0 AA.

In addition, Plaintiff seeks to enter into a court enforceable consent decree requiring Defendant to comply with WCAG 2.0 AA guidelines. In order for Defendant to comply with the basic principles and WCAG 2.0 AA, Plaintiff seeks the following of Defendant, which includes, but is not limited to the following:

a. Require Defendant to bring its websites in compliance with Title III of the ADA, Section 508 and WCAG 2.0 AA;

b. Retain a qualified consultant, acceptable to Plaintiff, to assist Defendant to comply with WCAG 2.0 AA;

c. Retain a qualified consultant, acceptable to Plaintiff, who will train designated employees and agents of Defendant who manage, implement, and develop the VCAHospitals.com VCAHospitals.com/West-Los-Angeles websites on accessibility compliance under the WCAG 2.0 AA guidelines;

d. Allow the qualified consultant and Plaintiff to regularly check the accessibility of Defendant's websites under the WCAG 2.0 AA guidelines;

e. Allow the qualified consultant, and Plaintiff, to regularly test user accessibility by blind or vision-impaired persons to ensure Defendant's websites comply with the WCAG 2.0 AA guidelines;

f. Create, adopt and maintain a web accessibility policy which comply with WCAG 2.0 AA guidelines;

g. Ensure services Defendant contracts with third-party developers and other relevant service providers conform to the relevant WCAG 2.0 AA standards and meet such standards and Defendant's own web accessibility policies;

h. Retain the qualified consultant to add input on how to develop, oversee and implement an accessibility policy that is clearly disclosed

on its websites, with contact information for users to report accessibility-related problems; and

i. Develop a process by which Plaintiff may meet-and-confer with Defendant, through counsel, to address all issues relating to website access and Defendant's accessibility/remediation efforts, within a time frame acceptable to Plaintiff for Defendant to resolve any such issues which may arise.

Plaintiff, by and through his counsel of record, seeks to periodically oversee the remediation efforts Defendant would be required to undertake through the retained qualified consultant to remediate Defendant's websites.

To obtain the relief sought herein, and settle this matter at mediation, Defendant pays $41,000 in total monetary consideration.

Dated: November 3, 2016    **MANNING LAW, APC**

By: /s/ Joseph R. Manning Jr., Esq.
Joseph R. Manning Jr., Esq.
Caitlin J. Scott, Esq.
Attorneys for Plaintiff